JASBIR K. SINGH, Adm'r of the Estate of Dalbir Singh, Deceased, Plaintiff-Appellee, v. AIR ILLINOIS, INC., Defendant-Appellant.

First District (1st Division)   No. 87—0200

Opinion filed January 11, 1988.

Pretzel & Stouffer, Chartered, of Chicago (Michael J. Merlo, of counsel), for appellant.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Peter K. Wilson, Jr., Donald C. Bevins, and Constance J. Burnett, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, Jasbir Singh (plaintiff), the administrator of the estate of her brother Dalbir Singh (decedent), was awarded $400,000 in a wrongful death action brought against Air Illinois, Inc.

(defendant). Decedent was a passenger on defendant's flight 710 when it crashed on October 11, 1983, while en route from Springfield to Carbondale, Illinois. Defendant's motion for a new trial was denied, and it appeals, contending that the trial court committed numerous errors, including: erroneously admitting and excluding certain evidence; improperly instructing the jury; refusing to give the jury essential instructions; and allowing the jury to return a verdict based on inappropriate deliberations. It is significant to note that on appeal, the question is not whether the trial was error free, but whether error occurred which prejudiced the appellant or unduly affected the outcome. (*Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747, 480 N.E.2d 1157.) Given that the deficiencies asserted by defendant do not rise to the level of reversible error, we affirm.

The evidence at trial disclosed that decedent was born in India, had six brothers and sisters, and emigrated with his family to Toronto, Canada, at age 15. He attended various schools in India and Toronto, and ultimately graduated from the University of Illinois in 1982. In late 1982, decedent and his brother formed a business which involved the selling of computer office management systems to physicians. Decedent, age 26, was on his way to deliver a system when he was killed.

Aside from being industrious, decedent was the youngest member of the board of trustees at his temple in Palatine, Illinois, was active in his community, and visited his parents and other family members often. Because decedent was responsible for his parents under religious custom, he purchased a home in Barrington, Illinois, where the three planned to live along with decedent's future wife. Decedent was to be married on October 26, 1983, just two weeks after his death.

On appeal, defendant initially argues that the trial court erred when it improperly allowed the jury to consider certain irrelevant and prejudicial testimony. Specifically, defendant objects to the testimony that: (1) decedent was the guardian of plaintiff's children; (2) decedent had offered to donate a kidney to his father; (3) Sikh religious custom required a child to support his parents; and (4) decedent was an active member of his church.

■ Relevancy is established where the offered evidence tends to prove a fact in controversy or renders a matter at issue more or less probable. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) In determining relevancy, the court must consider the evidence in light of the factual issues raised in the case. (*Svenson* 74 Ill. App. 3d 75, 392 N.E.2d 628.) Here, the factual issues raised involved the value of the loss of support and society suffered by dece-

dent's parents and siblings. In this regard, the challenged testimony was relevant, as it tended to show the loving and caring relationship decedent had with family members as well as his potential to financially contribute to their welfare.

■■■ Defendant next contends that the trial court erred when it admitted the hearsay testimony of Lance Laterza, vice-president of Articulate Publications, Inc. Laterza testified that he had a business relationship with decedent, and as a result, co-authored a dedication in a software manual which stated, "To Dalbir Singh, a genius of practice management and a dear friend we all miss very much." We, initially point out that while defendant objected to Laterza's testimony based on its probative value, no objection was made on hearsay grounds. Given that defendant failed to make an appropriate objection to this testimony, the issue is waived for purposes of review. (*Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 465 N.E.2d 689.) In any event, Laterza's testimony did not constitute hearsay, since he was the declarant and was present in court to testify and be cross-examined as to the declaration. (*Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.) Moreover, the testimony regarding Laterza's telephone conversation with decedent, also challenged by defendant on appeal, was not hearsay, as only the general subject matter of that conversation was elicited.

■■ Defendant also raises three objections to the testimony of plaintiff's expert economist, Dr. Charles Linke. First, defendant contends that Dr. Linke's testimony violated the 60-day requirement of Supreme Court Rule 220 (107 Ill. 2d R. 220), because he updated his 1983 report on the present value calculation of decedent's earning capacity just prior to trial. Rule 220(b), however, merely allows a trial court to establish a disclosure schedule if an expert witness is not otherwise disclosed. Here, Dr. Linke was otherwise disclosed, and, therefore, Rule 220(b) is not applicable. Rather Rule 220(c), which relates to discovery of an expert's opinion, states:

"(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel." (107 Ill. 2d R. 220(c)(3).)

The Committee Comments on this section provide:

"In order to prevent an undisclosed shift in theory or belief, the rule requires that a party seasonably submit a modified report or supplemental answers taking into account shifts in the expert's views." Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 440 (Smith-Hurd 1985).

Having reviewed the two reports, we conclude that Dr. Linke's revisions did not involve a "shift in theory or belief." Linke's revised report was merely an update of the original, using the same methodology and tables to determine present cash value. Accordingly, there was no violation of Supreme Court Rule 220.

Defendant additionally argues that Dr. Linke's testimony regarding decedent's future earning capacity was erroneously admitted because it was speculative. Dr. Linke based his testimony upon the earnings of the average male Illinois worker of decedent's age, education level, and life expectancy. Despite defendant's assertion to the contrary, such measure of future earning capacity has generally been used in wrongful death actions. (See, *e.g.*, *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413; *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 365 N.E.2d 390.) Furthermore, the fact that decedent's actual earning history prior to his death fell below the average for his statistical peer group is of no significance since the proper standard for loss or impairment of future earnings is based upon earning capacity rather than actual earning history. See *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 449 N.E.2d 250.

Lastly, defendant maintains that Dr. Linke improperly instructed the jury that the goal of their deliberations was to "award" plaintiff an amount which would replace decedent's income stream. While Dr. Linke did in fact use the word "award" in his testimony, there is no indication in the record that he instructed the jury to make an award as defendant claims. Furthermore, the trial judge specifically admonished the jury to follow the court's instructions in arriving at the final present cash value of any future earnings, thus eliminating any prejudice which may have resulted.

We now consider defendant's contention that the trial court erred in excluding the annuity testimony of Robert Ross and Mitchell Serota. Specifically, Robert Ross, an insurance broker, would have attested to the cost of an annuity.[1] While we recognize that our supreme court has sanctioned the use of annuity tables in determining present case value (*Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, *cert. denied* (1956), 352 U.S. 833, 1 L. Ed. 2d 53, 77 S. Ct. 49), the validity of such evidence does not signify that the cost of a particular annuity is likewise admissible,

---

[1]Judge Heilingoetter had previously precluded Robert Ross from testifying in a related action, Heagy v. Air Illinois, Inc., 83 L. 22901, also pending before this court (No. 1—86—3530). The offer of proof for Ross was made in that case.

or that it is representative of the present value of lost earnings. On the contrary, the *Allendorf* court cautioned that expert testimony should be used only with neutral figures to describe to the jury a mathematical process which would simplify the jury's task of determining present value. In fact, other courts have noted the misleading nature of placing before the jury the cost of an annuity contract as opposed to neutral figures. (*Herman v. Milwaukee Children's Hospital* (1984), 121 Wis. 2d 531, 361 N.W.2d 297; *Caldwell v. Southern Pacific Co.* (S.D. Cal. 1947), 71 F. Supp. 955.) Moreover, as an insurance broker relying on final quotations from outside sources, Ross could not be effectively cross-examined as to the basis and legitimacy of his testimony.

With respect to actuary Mitchell Serota, he was disclosed after trial had begun and two months after the final disclosure date set by the trial court. Under such circumstances, his exclusion was warranted. (See, *e.g., Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022.) Furthermore, defendant overlooks that economist Dr. Rawleigh Ralls was permitted to testify on its behalf regarding the computation of present cash value. Between the testimony of Dr. Linke and Dr. Ralls, the jury received sufficient explanation on the concept.

Equally unpersuasive is defendant's contention that two former employees of decedent, Lisa Chaffe and Kathy Kasperski, should have been permitted to testify that decedent failed to pay them and that the services provided by decedent's computer consulting business were neither unique nor in great demand. First, decedent's failure to pay his employees has no bearing on decedent's potential earning capacity, as it proves neither his business' current condition nor likelihood of its future success. Second, since defendant intended to qualify both employees as experts in order that they may testify as to the nature of decedent's business, the admission of their testimony would have been in violation of Supreme Court Rule 220 (107 Ill. 2d R. 220), as they were not disclosed as experts until the last day of trial.

Defendant further asserts that the trial court submitted four erroneous instructions to the jury, the first of which instructed the jury on circumstantial evidence. (Illinois Pattern Jury Instructions, Civil, No. 1.03 (2d ed. 1971) (hereinafter IPI Civil 2d).) In support of its position, defendant maintains that only speculative evidence, as opposed to circumstantial, was presented in this case. On the contrary, the record contains numerous examples of circumstantial evidence, including: Dr. Linke's testimony as to average earnings to infer what

decedent would have earned had he not been killed; Jasbir Singh's testimony that decedent had offered to donate a kidney to their father to infer decedent's loving relationship with his father; Jasbir Singh's testimony that it was Sikh custom for a child to support his parents to infer that decedent would have done so in the future; and priest Mahondi Singh's testimony as to decedent's trait of industriousness around the church to infer decedent would also have been hardworking in his profession. In light of the above testimony, defendant's argument must fail.

Additionally, defendant contends that the trial court erred in instructing the jury that adult siblings may recover for proven loss of society. (IPI Civil 2d No. 31.06.) Defendant avers that this instruction misstates the law and, in the alternative, that plaintiff failed to present any evidence of such loss. In *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1986), 146 Ill. App. 3d 116, 496 N.E.2d 1179, however, this court expressly held that adult siblings may in fact recover for proven loss of society. In so doing, the court reconciled *Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, 470 N.E.2d 34, relied on by defendant here, stating:

> "Our holding that this was error [referring to dismissal of decedent's siblings' claims] is in accord with *** *Prendergast* ***. In *Prendergast*, there was a jury trial. On appeal the first division of this court upheld the trial court's refusal to give instructions including as a matter of damages the loss of companionship and the loss of inheritance suffered by siblings. The refusal of the instruction could well have been deemed appropriate in view of the evidence adduced as indicated by the record on appeal." 146 Ill. App. 3d 116, 119, 496 N.E.2d 1179, 1181.

In the present case, however, there was ample evidence on loss of society as to decedent's adult siblings. Decedent and his family moved together to Toronto, Canada, from India. After he moved to the United States, decedent saw his older sister frequently, attended temple with her, and was guardian to her three children. He and his brother Guru were even business partners. In fact, defense counsel himself acknowledged decedent's close family relationship when he stated:

> "She has testified that the son goes up there every weekend, that he does the shopping, he fixes things, they were a close family, they moved to Toronto together, that they were going to live together because the temple was so close.
>
> I mean, closer than this a family perhaps can't get."

Therefore, we conclude that the instruction on decedent's siblings'

loss of society was properly given.

▪ Defendant also urges error in the instruction defining the term "society" as:

> "[T]he mutual benefits that each family member receives from the others [sic] continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection."

Defendant, without citing any authority, argues that this instruction was incomplete and prejudicial because it failed to state that the loss sustained could be very different for each family member, depending upon his/her relationship with decedent.

We believe that this instruction reflects a generally accepted definition of the term "society" for purposes of a wrongful death action (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228; *Drake v. Harrison* (1987), 151 Ill. App. 3d 1082, 503 N.E.2d 1072) and, consequently, the trial court did not err in giving it. Explicitly instructing the jury to consider the differences in the relationship of each family member with decedent is not only unnecessary, since the instruction does not imply otherwise, but is also argumentative, because it unduly highlights certain evidence. See *Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 417 N.E.2d 1099.

▪ Defendant further finds fault with plaintiff's tendered instruction number 10A, which included the statement that damages for loss of society are not reduced to present cash value. A review of the jury instruction conference shows, however, that defendant did not object to that portion of the instruction. Defendant, therefore, has waived the issue on appeal. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 466 N.E.2d 1064.) Even absent waiver, defendant cites no precedent to support its position that damages for loss of society should be so reduced. Accordingly, the instruction was proper.

▪ Defendant next argues that the trial court erred in refusing to give six instructions to the jury. The first instruction would allow the jury to infer that any evidence not offered but within the control of a party is adverse to that party. (IPI Civil 2d No. 5.01.) Specifically, defendant challenges plaintiff's failure to produce decedent's W–2 forms.

As noted in *Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645, the challenged instruction is warranted only when the following requirements are met: (1) the evidence was under the control of the party and could have been produced with the exercise of due diligence; (2) the evidence was not equally available to the adverse party; (3) a reasonably prudent person

under similar circumstances would have produced the evidence if it would have been favorable to him; and (4) there was no reasonable excuse for the failure to produce the evidence. In the instant case, the record indicates that plaintiff was unable to locate all of decedent's W—2 forms, that there was a reasonable excuse for her inability to do so, and that the forms were equally available to defendant. Under such circumstances, the court did not err in refusing defendant's instruction.

Defendant additionally tendered two non-IPI instructions, numbers 10 and 10A, which state that the jury must deduct from decedent's future earnings those amounts which decedent could not or would not have contributed to his parent's or next of kin's support. This same point, however, was addressed in plaintiff's instruction number 8, which admonished the jury to consider "[w]hat [decedent] spent for customary personal expenses [and other deductions]." (IPI Civil 2d No. 31.06.) Given that the principle of law urged by defendant is adequately stated elsewhere in the instructions, the trial court properly refused to submit numbers 10 and 10A to the jury. (*Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) Furthermore, defendant's tendered instructions improperly emphasize only one of several factors to be considered in calculating damages. *Handell v. Chicago Transit Authority* (1961), 30 Ill. App. 2d 1, 173 N.E.2d 529.

Similarly, the trial court's decision not to instruct the jury pursuant to defendant's non-IPI instruction number 11, which provides that decedent's earning capacity and wages are not themselves the measure of the economic support and pecuniary loss suffered by his heirs, was correct in light of plaintiff's instruction number 8, which clearly sets forth the proper measure of damages in a wrongful death action and the elements to be considered by the jury in arriving at a total.

Defendant next maintains that the trial court erred in refusing its non-IPI instruction number 12, which states that any award to plaintiff would be exempt from income tax, and hence, the jury should not consider the effect of taxes. Again, the instruction was properly refused in light of the recent supreme court decision *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 475 N.E.2d 857, which held that a jury should not be instructed that an award is not subject to income tax. (See also *Hall v. Chicago & North Western Ry. Co.* (1955), 5 Ill. 2d 135, 125 N.E.2d 77.) While the Federal appellate court has ruled otherwise in *Lux v. McDonnell Douglas Corp.* (7th Cir. 1986), 803 F.2d 304, that decision is of no precedential value here where our supreme court has clearly decided the issue.

■ Defendant also asserts that the trial court erred in refusing its non-IPI instruction number 13, which states that the jury should consider that other defendants, once sued by plaintiff, had settled with plaintiff. Relying on *Greenemeier v. Spencer* (Colo. 1986), 719 P.2d 710, defendant contends that this instruction was necessary so that the jury would not infer that defendant was solely responsible for the accident. While other jurisdictions differ in their approach as to what settlement information should be given the jury, this court advocates that the court, and not the jury, apply "setoff" once the jury has determined total damages without knowledge of any prior settlements between plaintiff and any other defendants. (See *Webb v. Toncray* (1981), 102 Ill. App. 3d 78, 429 N.E.2d 874.) Defendant's reliance on a Colorado case, therefore, is misplaced since Illinois case law is dispositive.

■ In its final argument, defendant claims that the jury improperly reached its verdict by averaging individual juror's verdicts. When a jury agrees in advance to arrive at a verdict by averaging, the verdict so rendered is improper. (*German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903.) There must be evidence, however, that the jury agreed to be bound by the average figure; the jury may experiment by considering average figures. (*German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903.) Here, there was no proof in defendant's affidavit that the jury agreed in advance to a quotient verdict. Consequently, we find no merit to defendant's argument.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.