JANE DREWS, Special Adm'r of the Estate of Randall Drews, Deceased, *et al.*, Plaintiffs-Appellees, v. GOBEL FREIGHT LINES, INC., Defendant-Appellant.

First District (5th Division) No. 1—88—2975

Opinion filed May 4, 1990.

1050

Clausen, Miller, Gorman, Caffrey & Witous, P.C., and Richard L. Berdelle, of Pretzel & Stouffer, Chartered, both of Chicago (James T. Ferrini, Edward M. Kay, and Richard R. Winter, of counsel), for appellant.

Albert F. Hofeld and Howard Schaffner, both of Hofeld & Schaffner, of Chicago, for appellees.

Cassidy & Mueller, of Peoria (David B. Mueller, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Gobel Freight Lines, Inc., appeals from a wrongful death award of $8,336,000 to plaintiff Jane Drews, individually and as administrator of the estate of her husband, Randall Drews. Defendant specifically appeals from the aforementioned verdict, the judgment entered thereon, and the trial court's denial of its post-trial motion for a new trial or, alternatively, a remittitur of $3,300,000. Decedent was fatally injured when his camper-van and one of defendant's semi-trailer trucks collided on August 12, 1985. Defendant admitted liability, and the case proceeded to trial on the issue of damages. The ver-

dicts of $150,000 for decedent's pain and suffering and $7,100 for medical and funeral expenses are not challenged by defendant.

On appeal, defendant asserts that an excessive award resulted because of improper jury instructions, the admission into evidence of certain photographs and videotapes, and an inappropriate closing argument by plaintiff's counsel. Joining in the appeal as an *amicus curiae* is the Illinois Association of Defense Trial Counsel (IDC). IDC is concerned only with the issue of whether awards for "pecuniary injuries" under the Illinois Wrongful Death Act (Act) (Ill. Rev. Stat. 1987, ch. 70, par. 2) should be reduced to present cash value.

During trial, there was much testimony about the character and life of decedent from his friends, neighbors, parents, wife, children, professional associates, and others. He was described as an outstanding young man who had a very close relationship with his wife (*e.g.*, they built their home together) and was actively involved in the parenting of his sons. At the time of his death, decedent was 32 years old and his sons were approximately three years old and three months old, respectively. Decedent was also active in community and volunteer activities. The terms "all-American guy," "great neighbor and friend," "most memorable person," "devoted husband and father," and similar expressions were used to describe him. Videotapes and photographs were admitted showing decedent participating in family activities.

Other witnesses included the first person on the accident scene and a paramedic who attended to decedent. Both men described decedent's pain and suffering while he was being cut free from the wreckage. Dr. Robert Kirschner, a forensic pathologist who performed the autopsy, testified in detail regarding decedent's injuries. These included blunt trauma injuries to the head, trunk and extremities, with one of his legs having been mangled when it was pushed against the engine of his van. In addition to this testimony, the trial court admitted certain photographs of the accident and decedent's injuries over defendant's objections.

■■■ Section 2 of the Wrongful Death Act provides, in pertinent part, that, "in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." (Ill. Rev. Stat. 1987, ch. 70, par. 2.) The Wrongful Death Act was originally enacted in 1853 and limited recovery to $5,000. The cap on damages was gradually raised to $30,000 by 1957 and, in 1965, the restriction was deleted in favor of a jury determination as to the amount of recovery without limita-

tion. (See Ill. Ann. Stat., ch. 70, par. 2, Historical Note, at 293-94 (Smith-Hurd 1989).) Despite statutory language that "the jury shall determine the amount of damages to be recovered without regard to and with no special instruction as to the dollar limits on recovery" (Ill. Rev. Stat. 1987, ch. 70, par. 2), Illinois courts have approved jury instructions regarding the elements of damages for which one may recover in a wrongful death action.

■ In *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, our supreme court held that the loss of a deceased father's felicity, care, attention, and guidance were compensable as pecuniary injuries. In 1982, "pecuniary injuries" was expanded to include loss of consortium as an element of damages. (*Elliott v. Willis* (1982), 92 Ill. 2d 530.) The *Elliott* court defined loss of consortium as including society, guidance, companionship, felicity, and sexual relations. Since then, Illinois courts have broadly interpreted "pecuniary injuries" to include loss of society to parents for the death of a minor child (*Bullard v. Barnes* (1984), 102 Ill. 2d 505); to parents of an adult decedent (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107); and to the adult children of a decedent (*In re Estate of Keeling* (1985), 133 Ill. App. 3d 226) regardless of financial dependency upon the decedent (*In re Estate of Wiese* (1989), 178 Ill. App. 3d 938). There appear to be diverse, but reconcilable, opinions as to whether a decedent's siblings may recover for loss of society. Compare *Prendergast v. Cox* (1st Dist. 1984), 128 Ill. App. 3d 84, and *Carter v. Chicago & Illinois Midland Ry. Co.* (4th Dist. 1985), 130 Ill. App. 3d 431 (sibling recovery denied), with *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1st Dist. 1986), 146 Ill. App. 3d 116 (interpreting *Prendergast* as not barring recovery if a sibling proves damages); accord *Singh v. Air Illinois, Inc.* (1st Dist. 1988), 165 Ill. App. 3d 923, and *Schmall v. Village of Addison* (2d Dist. 1988), 171 Ill. App. 3d 344.

Defendant first argues that an award for pecuniary damages for future loss of society must be reduced to present cash value in order to conform to sound economics and public policy. Based on this argument, defendant claims that the trial court erred in instructing the jury that damages for future loss of society are not reduced to present cash value. In short, defendant contends that if the nature of the loss is pecuniary under the Act, then it is also pecuniary for purposes of computation. IDC argues that all damages compensable under the plain wording of the Act, including loss of society and companionship, are pecuniary and, thus, are economic losses which should be reduced accordingly.

We agree with defendant that its contentions are encompassed by

the basic query as to whether there are any restrictions placed upon a jury's determination of an award under the Wrongful Death Act. We acknowledge that the only limitations, in addition to the "fair and just" language of the Act, are those imposed by case law. It is apparent from the Act's history that the concept of "pecuniary injuries" has been gradually expanded by case law with tacit approval from our legislature since no action has been taken to limit the changes. As a result, courts of review must often rely on case precedent in determining wrongful death issues.

Both defendant and IDC contend that the *Air Illinois* cases (*Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923; *Exchange National Bank v. Air Illinois, Inc.* (1988), 167 Ill. App. 3d 1081 *appeal withdrawn* (1988), 121 Ill. 2d 568; *Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060) were improvidently decided. These First District Appellate Court decisions held that an award for loss of society in a wrongful death action should not be reduced to present cash value. Defendant argues that the present cash value issue was wrongly decided in the *Air Illinois* cases because: (1) defendant waived the issue by failing to object to plaintiff's instructions in the trial court and, therefore, the appellate court's determination of the issue is merely *obiter dictum* and not precedent (*Singh*, 165 Ill. App. 3d 923); (2) the court held the jury instruction was proper because defendant failed to cite precedent for its position (*Singh*, 165 Ill. App. 3d 923; *Lorenz*, 168 Ill. App. 3d 1060); (3) the court relied on an unpublished but revised draft of the Illinois Pattern Jury Instructions in upholding the validity of plaintiff's instruction that loss of society should not be reduced to present cash value (*Lorenz*, 168 Ill. App. 3d 1060); (4) the court's reference to Illinois Pattern Jury Instructions, Civil, Nos. 34.02 and 34.04 (2d ed. 1971) (hereinafter IPI Civil 2d), which provide that noneconomic damages, such as pain and suffering, disfigurement, and disability, are not to be reduced to present cash value as a basis for approving the loss of society instruction (*Lorenz*, 168 Ill. App. 3d 1060); and (5) the court's finding that lost society cannot be calculated to the same arithmetic certainty as economic injury (*Exchange National Bank*, 167 Ill. App. 3d 1081).

No rehearing petitions were filed in the *Air Illinois* cases; however, defendant is in essence asking us to now reconsider those cases in the present case. We decline to reconsider the *Air Illinois* cases, but will merely elucidate the reasons we agree with Justice Buckley's rulings.

We first note that the waiver of the "present cash value" issue occurred in only one of the *Air Illinois* cases. (*Singh*, 165 Ill. App. 3d

at 930.) Furthermore, since the *Singh* appeal was based on an allegedly inappropriate wrongful death award, a ruling as to the propriety of a jury instruction that an award for loss of society should not be reduced to its present cash value could arguably be considered judicial *dictum* rather than *obiter dictum*, and as such can serve as precedent or, at the very least, persuasive authority. See *In re Marriage of Drews* (1985), 139 Ill. App. 3d 763, *aff'd on other grounds* (1986), 115 Ill. 2d 201.

Defendant also contends that this court approved the "no present cash value" instruction because the defendants cited no precedent. This may have been a factor in the *Singh* decision, but in *Lorenz,* Justice Buckley stated, "not only does defendant fail to cite any authority to support its position that such damages are to be reduced to present cash value, but it also overlooks the fact that Illinois Pattern Jury Instructions, Civil, Nos. 34.02 and 34.04 (2d ed. 1971) *** make clear that future noneconomic damages such as pain and suffering, disfigurement, and disability, damages which are akin to those in No. 9A [damages for loss of companionship, sexual relations, and society], are not to be so reduced." (*Lorenz,* 168 Ill. App. 3d at 1067.) This analysis is consistent with our supreme court's recent decision in *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, wherein the court reiterated that in Illinois, future damages for medical expenses and lost earnings shall be discounted to present cash value, but damages for pain and suffering, disability and disfigurement are not.

■■■ Despite defendant's (and IDC's) assertion that loss of society is a pecuniary and thus an economic damage, our courts have, by inference, espoused a contrary view, *i.e.,* loss of society is a noneconomic element of pecuniary damages. For example, the supreme court in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 514, in deciding that parents are entitled to a presumption of pecuniary injury in the loss of a child's society, states, "[i]n Illinois, too, the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury *to encompass nonmonetary losses.*" (Emphasis added.) The *Bullard* court continued, citing as an example of this trend the decision in *Elliott v. Willis* (1982), 92 Ill. 2d 530, which allowed compensation for loss of consortium. Holding that there is no longer a presumption of lost earnings upon a child's death, the *Bullard* court noted that "the chief value of children to their parents is the intangible benefits they provide in the form of comfort, counsel and society." (*Bullard,* 102 Ill. 2d at 516-17, citing *Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193.) It is therefore only logical to con-

clude that loss of society, no less than pain and suffering, is a noneconomic or intangible injury, and under present practice, should not be reduced to present cash value.

■ We find defendant's reliance on *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, to be misplaced. *Allendorf* was decided 34 years ago and whether loss of society, as it is expansively understood today, should be reduced to present cash value was not the issue. Although the relevant instruction examined by the *Allendorf* court instructed the jury to reduce awarded benefits to present cash value, the actual issue was whether an actuary should have used neutral figures. We could therefore say that the present cash value issue is *obiter dictum*, and merely persuasive authority. However, we prefer to follow the current trend wherein our supreme court treats pecuniary damages as including both economic and noneconomic losses. There is no doubt that today the general rule is that future noneconomic damages should not be reduced to present cash value.

■ We find it difficult to discern defendant's disagreement with the court's logic in *Exchange National Bank* that a noneconomic damage cannot be calculated to the same arithmetic certainty as an economic damage. This does not mean that intangible damages cannot be calculated based upon the evidence; it merely indicates that the calculations cannot, by the nature of the injury, be as precise as those based on more definite bases, *e.g.*, damages for future earnings.

■ Accordingly, the *Lorenz* court's reference to IPI Civil 2d Nos. 34.02 and 34.04 (pain and suffering, etc.) in categorizing loss of society damages is a reasonable syllogism. Furthermore, defendant's argument that the *Lorenz* court erred in relying on an unpublished but revised draft of IPI instructions is without merit. (The *Lorenz* instruction, which was taken from the revised version, was later adopted by the IPI committee. (See IPI Civil, No. 34.02 (3d ed. 1990) (adopted September 10, 1988).) However, the court explicitly approved the instruction, using the same rationale as in *Exchange National Bank*, because it determined that loss of society is similar to pain and suffering in that both are noneconomic injuries that should not be reduced to present cash value. Moreover, the instruction as used in the present case is appropriate. An instruction approved by the committee, but not yet approved by the supreme court, is sufficient if it is based on the evidence. *DeYoung v. Alpha Construction Co.* (1989), 186 Ill. App. 3d 758.

■ For the above reasons, we join the Fourth District Appellate Court (see *Goad v. Evans* (1989), 191 Ill. App. 3d 283) in concluding that the *Air Illinois* rulings are valid precedent for the concept that

loss of society damages should not be reduced to present cash value.

■■■■ Defendant next argues that the verdict is excessive because it is based on sympathy and prejudice. It contends that the $8.3 million award bears no relationship to decedent's earning capacity or loss of his society. We disagree. The amount of damages to be awarded in a wrongful death action rests largely within the discretion of the jury and should not be overturned unless it is evidently the result of passion or prejudice, falls outside the limits of fair and reasonable compensation, or shocks the judicial conscience. (*Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036.) We, as a reviewing court, cannot substitute our judgment for that of the jury if the evidence indicates the award is reasonable compensation for pecuniary injuries to decedent's widow and children. As discussed above, pecuniary injury includes not only loss of financial support, but also all of those intangible benefits encompassed by the terms "loss of society" or "loss of consortium." Furthermore, a jury may take into account the fact that decedent was enterprising and industrious and had good prospects for advancement. *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164.

During trial, there was unrebutted evidence that decedent was an exemplary husband and father. Moreover, contrary to defendant's assertions, there was competent evidence from which a jury could deduce that decedent would have enjoyed a progressive and substantial increase in his earnings. He was 32 years old when he died. He had worked for seven years as an insurance salesman for his parents' insurance agency, which he was to have purchased on January 1, 1986, when his parent retired. The agency's financial records showed that decedent would have earned approximately $60,000 in 1985; $21,860 in a fixed salary and a projected $38,507 in commissions as an independent agent for several health and life insurance companies. Testimony elicited from several insurance executives indicated that decedent had been selected outstanding young insurance salesman of 1985 in Illinois and was also the leading salesman out of 3,000 agents in a three-State area for one company. Another company's sales manager stated that decedent was the most prolific salesman of the company's innovative policy. Other testimony indicated that his future as a salesman was "bright," and that he sold the bulk of casualty insurance for the agency. In addition to this testimony, the record reveals that decedent had sold over $1 million in premiums for his agency in the first 7½ months of 1985. From the independent commissions on health and life insurance policies he had sold, decedent earned $8,360 in 1982, $11,592 in 1983, $15,595 in 1984, and the projected $38,507 in 1985.

■■ ■ In determining damages, a jury may consider what a decedent earned or might reasonably be expected to earn in the future. (*American National Bank & Trust Co. v. Bourland* (1978), 65 Ill. App. 3d 977.) The above figures considered in tandem with testimony indicating the possibility that decedent would have been highly suc-, cessful in his field are sufficient bases for a jury to determine that he would have earned considerable future sums as sole owner of the agency. Furthermore, the trial court properly refused to allow defendant to argue to the jury what the sum awarded would return if invested at a specific percent. (See *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1.) Defendant's attempts to establish the excessiveness of the award by comparing it to awards in other wrongful death cases is without avail. The propriety of such awards is not subject to exact mathematical computation and cannot be measured by comparison with other verdicts. (*Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329.) As a matter of interest, we note that there have been comparable sums awarded to wrongful death plaintiffs at trial court level in cases that have not been appealed to this court. And, this court has recently affirmed an award of $3,600,000 to the husband and 10 adult children for the loss of society of a 75-year-old woman. *DeYoung v. Alpha Construction Co.* (1989), 186 Ill. App. 3d 758.

■■■ Accordingly, since the facts of this case are adequate to support the award, we decline to substitute our judgment for that of the jury. The award does not fall outside the limitations of fair and reasonable compensation. Although we conclude that the record reveals an adequate evidentiary basis for the award, we must still address defendant's contention that, because of trial errors, the verdict was a result of passion and prejudice. The two morgue photographs of decedent were admissible as being relevant to his pain and suffering. This is so even though the pathologist testified as to decedent's injuries. If a decedent's photograph has sufficient probative value, it should be admitted even though it may be gruesome or inflammatory, and such a decision is normally within the trial court's discretion. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505.) We find no abuse of discretion here. Defendant also objects to admission of a photograph of the accident scene because it argues that, pursuant to a motion *in limine*, no evidence regarding the manner or cause of the accident was permitted. The photograph showed defendant's tractor-trailer surrounding and partially inside the crushed van of decedent. It was admitted for the purpose of showing the extent of pain and suffering during the 30 minutes decedent was pinned inside the wreckage and, again,

is a proper exercise of the trial court's discretion. See *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1; *Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705.

■■■ Defendant also objects to the admission of nine photographs showing decedent, before his accident, engaged in various activities and two video tapes with narration showing him teaching his older son to swim and play golf. No contention has been made that these exhibits were not probative to the relationships of decedent to his wife and sons. There is no reason not to admit such evidence in a wrongful death action in order to depict the love and companionship of a decedent towards his family when such evidence has long been admissible to show that a plaintiff has been feigning injury in personal injury cases. See *Cisarik v. Palos Community Hospital* (1989), 193 Ill. App. 3d 41.

■■■ Defendant's claim that repetitive jury instructions given unduly emphasized plaintiff's claim for loss of society is without merit. One of the objected-to instructions explained what is encompassed by the term "pecuniary loss," *e.g.*, future earnings, society, conjugal relationship, goods and services; the other brief instruction defined "loss of society and companionship," *e.g.*, love, affection, guidance. These terms do not indicate the same concepts and were based on the evidence. The instructions were complementary, not repetitive.

■■■ Lastly, defendant argues that, because of the above alleged errors and a prejudicial closing argument, it did not receive a fair trial. Defendant made no objections at trial to the following alleged errors, but now asserts that the cumulation of these errors mandate reversal under the plain error rule. We first note that matters not objected to at trial are waived for review unless they are so egregious as to deny one a fair trial. (*Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121.) Defendant first objects to statements made during plaintiff's closing argument regarding decedent's pain and suffering in which the jury was asked to suppose what his last thoughts were, *e.g.*, "[h]is feet are pinned. He can't get out. But he feels something warm because that's the way that somebody feels when they are bleeding ***. He felt his blood, he could smell the flesh burning on his leg up against the engine. That's something he knew. He was conscious." While we do not approve of this type of argument, we consider it to be harmless error in this case. The jury had been explicitly informed that this argument applied to decedent's pain and suffering. The jury's award of $150,000 on this count was reasonable and was not appealed. Therefore, we can find no prejudice flowing from the remarks. See *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132

Ill. App. 3d 1061.

■■ We have reviewed counsel's statements regarding loss of society, *e.g.*, "[y]ou wake up in the morning he's the first person you see. It sort of makes life worth living, doesn't it? *** When you got problems, you resolve them together *** ." These and other remarks, were, for the most part, reflections on the very close relationships decedent shared with his family and were based on testimony adduced during trial. No objections were then made and none of the statements rise to the level of plain error. We also dismiss as meritless defendant's arguments regarding plaintiff's alleged references to insurance, during *voir dire* and closing argument. Neither incident appears to be error and, even if it were, no prejudice has been shown. All of the above claimed errors, and others, were brought to the trial court's attention by defendant's post-trial motion for a new trial and the subsequent hearing thereon. The trial court's ruling that no prejudicial error occurred is entitled to great weight (*Goad v. Evans* (1989), 191 Ill. App. 3d 283) and no sufficient arguments have been proffered to overcome that determination.

■■ It appears to us that this appeal constitutes a back-door attempt to place a cap on wrongful death damages. We are unable to do that absent a valid reason contained in the record. Such limitations are a legislative prerogative. (*Jones v. Karraker* (1983), 98 Ill. 2d 487.) Accordingly, since the award does not fall outside the parameters of fair and reasonable compensation, is not a result of passion or prejudice, and is not so large as to shock the judicial conscience, we must affirm the trial court's orders.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.