2004 UT App 322

**Anthony and Dawn GALLEGOS, as guardians of Anthony D. RYNES, a minor child; Joyce Dixon; Epifanio Gallegos, individually; and Michael Gallegos, as personal representative of the Estate of Patricia Raquel Gallegos, Plaintiffs and Appellees,**

v.

**DICK SIMON TRUCKING, INC.; Ronald D. Purta, individually; and John Does I–V, Defendants and Appellant.**

**No. 20020802–CA.**

Court of Appeals of Utah.

Sept. 23, 2004.

Rehearing Denied March 31, 2005.

---

Andrew M. Morse, John R. Lund, Julianne Blanch, Snow Christensen & Martineau, Michael D. Zimmerman, Tawni J. Sherman, and Troy L. Booher, Snell & Wilmer, Salt Lake City, for Appellant.

Brian J. Romriell, Parr Waddoups Brown Gee & Loveless, Salt Lake City, and Erik M. Ward, Gridley Ward & Shaw, Ogden, for Appellees.

Before Judges DAVIS, Jackson, and ORME.

## OPINION

JACKSON, Judge:

¶ 1 Dick Simon Trucking, Inc. Dick Simon appeals the jury verdict award in favor of the guardians the Gallegoses of Anthony Rynes. We reverse and remand.

## BACKGROUND

¶ 2 In 1998, Rynes was severely injured in an auto collision caused by a Dick Simon employee. In October 2001, a jury trial was held. Dick Simon admitted liability. The Gallegoses and Dick Simon had relatively minor disagreements. The fact and extent of Rynes's injuries and the future cost of providing Rynes's care were not seriously disputed, and experts for both parties had based their calculations of present value damages on the current cost of Rynes's care, $16,000 per month. Thus, the only contentiously contested question for the jury was how to calculate the present value of Rynes's future damages.

¶ 3 Despite the narrowness of the issue, the case was extremely time and labor intensive for the court. In total, the court ruled on over thirty pretrial motions. In particular, seven months before trial, Dick Simon moved for leave to present expert testimony regarding the cost and features of an annuity,[1] which it would introduce to assist the jury in the calculation of the present value of damages. Two months before trial, the court ruled to admit the proffered annuity evidence, provided that the parties could agree to an appropriate jury instruction.

¶ 4 At the beginning of the three-week trial, the Gallegoses moved for reconsideration of the ruling to admit the annuity evidence. The court deferred ruling on the issue but prohibited the parties from making specific price quotes in their opening statements.

¶ 5 The Gallegoses proceeded with their case-in-chief, calling twenty-one witnesses.

---

1. An annuity is an agreement by which one pur-    chases the right to receive future payments.

The Gallegoses' witnesses included Rynes's uncle, an eyewitness to the collision, two emergency responders, nine of Rynes's therapists and doctors, three staff members of the long-term care facility where Rynes lives, three medical experts, a financial consultant, and a long-term care planning expert. The Gallegoses' financial consultant, who testified regarding Rynes's financial requirements, based his calculations on the amount that could be earned from an investment in United States Treasury bills.

¶ 6 In its case-in-chief, Dick Simon had planned to call five witnesses. Dick Simon did call two medical experts, one of whom the Gallegoses had also called. The medical experts testified regarding Rynes's preexisting conditions and other medical problems that were not directly related to the collision. At that point, Dick Simon had planned to call, as an annuity expert, a long-time executive in an international insurance company who would testify regarding the cost and features of an annuity, which could provide for Rynes's future care expenses. Before this witness was called, however, the trial court granted the Gallegoses' motion to reconsider and ruled to exclude all testimony regarding annuities. The court did not consider whether the annuitist was properly qualified as an expert. The parties did not voir dire the annuitist to determine the exact extent to which he understood the calculations that underlay annuity costs, but the record indicates that the annuitist could provide a substantial amount of information regarding the basis for the calculation of an annuity's cost.

¶ 7 Based on the ruling, Dick Simon instead called a long-term care planning expert whose testimony opposed a similar expert who the Gallegoses had called. Dick Simon next called an economist, who Dick Simon had planned to question regarding annuities but could not because of the court's ruling. Again, the court did not consider the individual's annuity expertise or the expert's ability to lay the foundation for an annuity's cost. The economist did provide testimony to challenge the assumptions used by the Gallegoses' financial consultant regarding expected inflation rates. Ultimately, the jury returned a $12 million award in favor of the

Gallegoses. Dick Simon now appeals the award.

## ISSUE AND STANDARD OF REVIEW

■■■■ ¶ 8 The issue here is whether the trial court properly ruled to exclude all evidence concerning annuities. Appellate courts review some evidentiary rulings under a "clearly erroneous" standard and others under a "correctness" standard. *State v. Pena*, 869 P.2d 932, 938–39 (Utah 1994). The clearly erroneous standard applies when the issue relates to factual determinations. *See id.* at 935. For example, trial courts have broad discretion to determine whether to take judicial notice of a fact, *see Riche v. Riche*, 784 P.2d 465, 468 (Utah Ct.App.1989), whether to exclude an expert whose testimony a party had not disclosed prior to trial, *see Gerbich v. Numed Inc.*, 977 P.2d 1205, 1208 (Utah 1999), whether a particular individual qualified as an expert, *see Patey v. Lainhart*, 977 P.2d 1193, 1196 (Utah 1999), whether expert scientific evidence is sufficiently reliable to be admitted, *see Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 16, 31 P.3d 557, and whether expert testimony is properly relevant, *see Slisze v. Stanley–Bostitch*, 1999 UT 20, ¶ 19, 979 P.2d 317. Trial courts also have discretion in issues concerning court efficiency. *See Morton v. Continental Baking Co.*, 938 P.2d 271, 275 (Utah 1997).

■■■■ ¶ 9 In contrast, the correctness standard applies when the question turns on a legal determination. For example, appellate courts use the correctness standard to evaluate a trial court's ruling on the application of a privilege. *See State v. Anderson*, 972 P.2d 86, 88 (Utah Ct.App.1998). Generally, "[w]hether evidence is admissible is a question of law, which we review for correctness." *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995) (quoting *State v. Diaz*, 859 P.2d 19, 23 (Utah Ct.App.1993)) (alteration in original).

¶ 10 In this case, we review the trial court's ruling to exclude all evidence regarding annuities. The trial court based its ruling on the ground that the testimony asked the jury to decide how to invest the award. Thus, the question here is whether a party is

entitled to adduce any evidence, through any expert witness, regarding an annuity's cost. This is not a question of fact because the court did not make its ruling on the qualifications of the proposed witness, courtroom efficiency, evidentiary relevancy, or evidentiary reliability. We thus conclude that the appropriate standard of review is that which applies to legal questions on the admissibility of evidence, viz., correctness.

## ANALYSIS

### I. Cost of Annuity Evidence

¶ 11 In Utah, a finder-of-fact must discount damages for future losses "to the present cash value." Model Utah Jury Instruction 27.11; *see also Klinge v. Southern Pac. Co.*, 89 Utah 284, 57 P.2d 367, 370 (1936). Yet, the required calculation is "almost impossible" for a jury without assistance. *Bennett v. Denver & Rio Grande W. R.R. Co.*, 117 Utah 57, 213 P.2d 325, 328 (1950). Fortunately, a cornucopia of evidence is available with which litigants can equip the jury to compute this calculation. In particular, in this case, Dick Simon sought to introduce evidence relating to an annuity's cost to assist the jury in calculating the present value of future damages.

¶ 12 Evidence relating to annuities comes in two forms: (1) annuity tables and their related data, which provide the formulas used in making annuity calculations, and (2) the cost of an annuity as applied to the facts in the particular case. *See Singh v. Air Ill., Inc.*, 165 Ill.App.3d 923, 117 Ill.Dec. 501, 520 N.E.2d 852, 856–57 (1988). Previous Utah cases have permitted the former, the introduction of annuity tables and their related data.[2] *See Schlatter v. McCarthy*, 113 Utah 543, 196 P.2d 968, 974–75 (1948); *see also Bruner v. McCarthy*, 105 Utah 399, 142 P.2d 649, 656 (1943). Utah has not ruled on the latter, and Utah's sister states split into two schools of thought on the question.

¶ 13 Representing one of these schools, Wisconsin and Illinois reject the admission of the cost of an annuity to compute present value. *See, e.g., Lorenz v. Air Ill., Inc.*, 168 Ill.App.3d 1060, 119 Ill.Dec. 493, 522 N.E.2d 1352, 1356 (1988); *Singh*, 117 Ill.Dec. 501, 520 N.E.2d at 856–57; *Herman v. Milwaukee Children's Hosp.*, 121 Wis.2d 531, 361 N.W.2d 297, 306 (1984). These courts were concerned that annuity cost evidence would have misled the jury. The *Herman* court expressed concern that the evidence would have "misled the jury into believing it must award a lesser sum than the present value of the future losses." 361 N.W.2d at 306. The *Lorenz* court worried that this evidence would have "[misled] the jury into accepting [a] hypothetical figure." 119 Ill.Dec. 493, 522 N.E.2d at 1356.[3]

¶ 14 Following the rationale of the *Lorenz* and *Herman* courts, the Gallegoses argue that this evidence would mislead the jury into believing that the cost of an annuity would provide adequate income when, in fact, future medical expenses are difficult to predict and may arise suddenly. Rather than proving the Gallegoses' point, this argument emphasizes that the calculation of future expenses, inherently challenging and inevitably imprecise, is even more difficult in the context of future losses for medical expenses. More information, not less, would best empower the jury to effectively master its charge. The Gallegoses can sufficiently assuage their own concerns with effective

---

2. During the motion to reconsider hearing, the Gallegoses' counsel inaccurately and imprecisely represented to the trial court that no Utah court had ruled on whether to admit annuity evidence.

3. Also on the side of the first school of thought, but with a different rationale, the Eighth Circuit has held annuity cost evidence inadmissible. *See Farmers Union Federated Coop. Shipping Ass'n. v. McChesney*, 251 F.2d 441, 444 (8th Cir.1958). That case is different from this case. There, the court was not concerned with the evidence misleading the jury. Rather, the court reasoned that an annuity's cost did not properly measure future damages. *See id.* The plaintiff sought to introduce annuity cost evidence, but the court ruled that an annuity's cost was an inappropriate measure of damages because the cost invariably includes a profit to the selling company. *See id.* In this case, though, Dick Simon, the defendant, seeks to introduce similar evidence and does not object that the annuity may be artificially higher than the appropriate measure of damages. While the arguments made in *Farmers* may have merit, the precise issues in *Farmers* are not before us presently.

cross-examination and the introduction of competing evidence.[4]

¶ 15 Courts that represent the second school of thought permit the cost of an annuity to be admitted at trial.[5] Those courts reason that the cost of an annuity is relevant to and helpful in determining the present value of future losses. *See, e.g., Scott v. United States,* 884 F.2d 1280, 1287–88 (9th Cir.1989); *Southlake Limousine & Coach, Inc. v. Brock,* 578 N.E.2d 677, 684 (Ind.Ct. App.1991); *Cornejo v. Washington,* 57 Wash. App. 314, 788 P.2d 554, 562 (1990).

¶ 16 In this case, the trial court explicitly excluded all testimony regarding annuities on the ground that it asks "the jury to decide how the money should be invested." But, rule 702 of the Utah Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" an expert witness may testify. Utah R. Evid. 702. The complex calculation of present value of future damages is certainly an area in which an expert's "specialized knowledge will assist the trier of fact." *Id.*

¶ 17 We conclude that the trial court committed an error of law when it ruled to exclude evidence concerning annuity calculations, which may have provided the proper foundation for admission of the cost of an annuity. The admission of annuity evidence does not require the jury to select a particular investment. Rather, it affords the jury the opportunity to understand the cost today of income for the future-that is its present value.

## II. Harmful Error

¶ 18 Dick Simon argues that the trial court's ruling to exclude the annuity evidence, particularly considering the timing of the ruling, was harmful. We will disturb a trial court's evidentiary ruling only if it results in harmful error. *See Covey v. Covey,* 2003 UT App 380,¶ ¶ 20–22, 80 P.3d 553, *cert. denied,* 90 P.3d 1041 (Utah 2004).

¶ 19 Harmless error is "an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 796 (Utah 1991) (quotations and citation omitted). In *State v. Knight,* the Utah Supreme Court held that the definition of a "reasonable likelihood" is "substantively identical" to a "reasonable probability." 734 P.2d 913, 920 (1987). The United States Supreme Court has defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Utah Supreme Court further defined the

---

4. The Gallegoses assert two further points of significance. The first is that the annuity evidence is misleading both because it came from a company that has a corporate relationship with Dick Simon's insurer and because it is limited in time. While there may be a risk that a related company might give an artificially lowered quote, we will not assume that a witness will commit perjury. Also, the Gallegoses are responsible for impeaching witnesses regarding their biases and the limits of their knowledge and testimony.

   Second, the Gallegoses assert that the evidence lacks foundation because the cost quote is based partly upon the assumption that the victim has a "reduced life expectancy" and that this enables Dick Simon to profit from its wrongdoing. This case involves only compensatory damages. Thus, the jury's charge is not to punish Dick Simon but to compensate Rynes for his injuries. It is irrelevant that this particular quote for an annuity is based on a risk that Rynes may die prematurely.

5. Courts in the Ninth Circuit, Arkansas, California, Indiana, Louisiana, Minnesota, Mississippi, Montana, Ohio, Oklahoma, Texas, and Washington represent this school of thought. *See Scott v. U.S.,* 884 F.2d 1280, 1287–88 (9th Cir.1989); *St. Louis, Iron Mountain & S. Ry. Co. v. Hitt,* 76 Ark. 227, 88 S.W. 908, 911 (1905); *Emery v. Southern Cal. Gas Co.,* 72 Cal.App.2d 821, 165 P.2d 695, 698 (1946); *Southlake Limousine & Coach, Inc. v. Brock,* 578 N.E.2d 677, 684 (Ind.Ct.App.1991); *Linares v. Louisiana Dep't of Transp. & Dev.,* 582 So.2d 879, 884 (La.Ct.App.1991); *Nelson v. Twin City Motor Bus Co.,* 239 Minn. 276, 58 N.W.2d 561, 564–65 (1953); *Rayner v. Lindsey,* 243 Miss. 824, 138 So.2d 902, 908 (1962); *Thomas v. Whiteside,* 148 Mont. 394, 421 P.2d 449, 451 (1966); *Watkins v. Cleveland Clinic Found.,* 130 Ohio App.3d 262, 719 N.E.2d 1052, 1067 (1988); *Guinn v. Kansas City S. Ry. Co.,* 547 P.2d 1310, 1314–15 (Okla.Ct.App.1975); *Gulf, Colo. & Santa Fe Ry. Co. v. Hampton,* 358 S.W.2d 690, 691 (Tex.Civ.App.1962); *Cornejo v. Washington,* 57 Wash.App. 314, 788 P.2d 554, 562 (1990).

term as falling above "the 'mere possibility' point" but "substantially short of the 'more probable than not' portion of the spectrum." *Knight*, 734 P.2d at 920. Thus, an error is "harmful error" when there is a probability, sufficient to undermine our confidence in the outcome, that the error affected the outcome of the proceedings.

¶ 20 In essence here, the jury was solely charged with determining the present value of future damages. The Gallegoses' financial consultant, Randle, estimated that Rynes would require between almost $14 million and over $52 million. Dick Simon was able to call an expert who contested Randle's estimates of inflation rates and concluded that the damages would be between about $4.9 million and $6.6 million. Dick Simon's annuity expert would have testified that an annuity for this case would cost between $4,107,604.23 and $5,695,110.38, depending on the annual inflation rate. Yet, the trial court's ongoing evidentiary rulings, and particularly the timing of the final, erroneous ruling, prohibited Dick Simon from adducing evidence from another expert witness regarding the annuity calculations, presumably to lay a proper foundation for cost, and from calling its expert witness regarding the cost of an annuity.

¶ 21 The appellant bears the burden of showing the harmfulness of the error. *See Joseph v. W.H. Groves Latter–Day Saints Hosp.*, 10 Utah 2d 94, 348 P.2d 935, 938

(1960). Dick Simon has met that burden. We conclude that, with the presentation of annuity evidence as an alternative means to calculate present value of future damages, there is a reasonable likelihood that the jury award would have been lower. Thus, the erroneous ruling excluding all annuity evidence was harmful.[6]

## CONCLUSION

¶ 22 The trial court incorrectly ruled to exclude all testimony regarding annuities. Evidence regarding the formulation of annuity calculations as well as the cost of an annuity is admissible if proper foundation is laid. The error, particularly in light of the timing of the ruling, prejudiced Dick Simon's case and resulted in harmful error.

¶ 23 We reverse and remand for a new trial or other proceedings consistent with this decision.

¶ 24 I CONCUR: JAMES Z. DAVIS, Judge.

¶ 25 I DISSENT: GREGORY K. ORME, Judge.

---

**6.** Because we are remanding for a new trial on the annuity issue, we need not reach the trial court's denial of Dick Simon's motions for mistrial and new trial.