In re **AIR DISASTER AT LOCKERBIE, SCOTLAND ON DECEMBER 21, 1988.**

Faith **PESCATORE, as Personal Representative and Administrator of the Goods, Chattels and Credits of Michael C. Pescatore, Deceased, Plaintiff,**

v.

PAN AMERICAN WORLD AIRWAYS, INC., and Alert Management Systems, Inc., Respondent.

**M.D.L. No. 799 (TCP).**
**No. 89–CV–1719 (TCP).**

United States District Court, E.D. New York.

May 26, 1995.

Aaron J. Broder and Meryl Schwartz, Law Offices of F. Lee Bailey & Aaron J. Broder, New York City, for plaintiff Faith Pescatore.

Keith D. Dunnigan and Edward P. Brady, Bai, Pollock & Dunnigan, Bridgeport, CT, for defendants Pan American World Airways, Inc. and Alert Management Systems.

## MEMORANDUM & ORDER

PLATT, District Judge.

Pursuant to Federal Rules Civil Procedure Rule 59(a)[1], the defendants move for a new trial on the issues of damages for pecuniary loss and loss of society. This Court denies defendants' motions. The jury's verdict for plaintiff's financial loss and loss of society is fully supported by credible evidence.

## BACKGROUND:

On April 3, 1995, this Court empaneled a jury to hear the case of *Faith Pescatore, as Personal Representative and Administrator of the Goods, Chattels and Credits of Michael Pescatore Deceased v. Pan Am World Airways, Inc. and Alert Management Systems, Inc.*, 89 CV 1789 (TCP). The jury was asked to determine the amount of damages that should be awarded to Mrs. Pescatore for her claim of the wrongful death of her husband, Michael Pescatore, as a result of the wilful misconduct by Pan Am which another jury found to be a proximate cause of the tragic bombing of Pan Am Flight # 103 over Lockerbie, Scotland.

The undisputed facts are that Michael Pescatore graduated from Harvard with a degree in engineering and applied physics in 1977 and from the University of Chicago with a Masters Degree in Business Administration in 1979. At the time of his death in December, 1988, at the age of 33, he had earned the distinction of being the youngest Vice President in the history of British Petroleum ("BP"), where he had been working since he graduated from the University of Chicago. He was in London in December, 1988, preparing to begin work on a new position, at the International Headquarters of BP in London. He was scheduled to start in January, 1989. Not surprisingly, Mr. Pescatore had been specially selected to be a member of the Individual Development Program, an honors program at BP for particularly able young executives.

In accordance with the evidence presented and this Court's instructions, the jury awarded Mrs. Pescatore $19,059,040.00: $9,000,-000.00 for financial loss, $5,000,000.00 for loss of society, $14,000.00 for losses of services and $5,045,040.00 for interest due on the award from the date of Mr. Pescatore's death to the date of judgment.

## DISCUSSION:

### A. Financial Loss

■ Arguments that a rapidly rising executive officer, such as Michael Pescatore, would not have contributed, with reasonable foreseeability, $9 million to his wife over the ensuing thirty years border on the frivolous. Quite apart from the testimony in the case, to find the jury acted reasonably one need only consider the present compensation for top corporate officers of major corporations similar to British Petroleum. For example: (1) the aggregate compensation over the last

---

**1.** Rule 59. New Trials.
(a) Grounds. A new trial may be granted to [the] parties ... (1) in an action in which there

has been a trial by jury, for any of the reasons for which new trials have heretofore been granted....

three years for the Chief Executive Officer (CEO) of Exxon was $9,643,000; (2) the aggregate compensation over the last five years for the CEO of Amoco was $9,518,000; (3) the aggregate compensation over the last five years for the CEO of Occidental Petroleum was $22,897,000; and (4) the aggregate compensation over the last three years for the CEO of Texaco was $7,426,000. Eric S. Hardy, *America's Highest–Paid Bosses,* FORBES, May 22, 1995, at 180, 200–03.

This Court further notes that compensation for executives engaged in the energy field is well below the monies paid to executives in other fields. The following list of examples represents top annual salaries for executives in a variety of corporate fields: (1) Conseco—$39,610,000, (2) Green Tree Firm—$28,978,000, (3) DSC Communications—$25,249,000, (4) Bear Sterns Cos—$15,648,000, (5) Compaq Computer—$15,442,000, (6) Colgate/Palmolive—$13,460,000, (7) General Dynamics—$12,454,000, and (8) IBM—$12,355,000. *Id.* at 182.

The jury's decision also is very reasonable in light of the specific evidence presented at the trial. Dr. Edward Glaeser, Ph.D., plaintiff's expert, opined that decedent's earnings would grow at an annual rate of 11.6% until he retired at the age of sixty eight.[2] Plaintiff Exh. 87(a). Dr. Glaeser pointed out that the growth rate of Michael Pescatore's real income between 1984 and 1988 was 16.6% per annum. Tr. 582. Decedent's bonuses had increased approximately 400% over his last four years with British Petroleum, beginning with $8,800 in 1984 and progressing to $34,000 by 1988. Plaintiff's Exh. 109.

Using the percentages above, plaintiff's expert estimated that at a minimum Mr. Pescatore's aggregate future earnings available to his spouse would have been $25.5 million. Plaintiff Exh. 105. Dr. Glaeser arrived at that figure by using a base monetary salary of $118,901, the salary reported in Mr. Pescatore's 1988 W–2 form, and incrementally increasing that salary based on the raises in compensation the decedent had received. Plaintiff Exh. 105. As the jury's award for loss of compensation was $9 million, well

below the minimum set forth by plaintiff's expert, this Court finds the jury acted responsibly and within reasonable bounds.

## B. Loss of Society

■ Similarly, the arguments that an award of $5 million for loss of society, love, caring, comfort, affection and companionship, measured over a projected period of at least thirty years (circa $167,000 per year), is excessive are also without merit. The testimonials to Michael Pescatore's character, affectionate relationship with his immediate family and friends, and his deep and abiding love and affection for his wife were extensive, moving and uncontradicted. That part of plaintiff's testimony which recounted her receipt of the news of her husband's death was and is unforgettable.

Although the award in this case is apparently the largest in the history of aviation disasters, similar awards for loss of love and affection are not unheard of in other wrongful death actions. *See, e.g., Reese v. Mercury Marine Div. of Brunswick Corp.,* 793 F.2d 1416, 1433–34 (5th Cir.1986) (Court of Appeals let stand a jury award for wrongful death which included $2,166,000 for non-economic damages "for loss of love and affection, guidance and counsel") *Holston v. Sisters of the Third Order of St. Francis,* 247 Ill. App.3d 985, 187 Ill.Dec. 743, 618 N.E.2d 334, *appeal denied,* 152 Ill.2d 559, 190 Ill.Dec. 889, 622 N.E.2d 1206 (1993), ($6.2 million awarded for the loss of society suffered by the surviving husband, who received $1.2 million, and two children in the death of a woman in a medical malpractice action); *Drews v. Gobel Freight Lines, Inc.,* 144 Ill.2d 84, 161 Ill.Dec. 324, 578 N.E.2d 970 (1991) (A gross verdict of $8.3 million for the loss of thirty-two year old husband and father was sustained, despite the observation by the dissenting judge that "the bulk of the award, perhaps as much as $7 million, was for loss of society", *Id.* 161 Ill.Dec. at 335, 578 N.E.2d at 981); *DeYoung v. Alpha Constr. Co.,* 186 Ill.App.3d 758, 134 Ill.Dec. 513, 542 N.E.2d 859, *appeal denied,* 128 Ill.2d 662, 139 Ill. Dec. 511, 548 N.E.2d 1067 (1989), (Verdict in

**2.** Despite Dr. Glaeser's belief that Mr. Pescatore's average annual growth rate would be

11.6%, he applied an idiosyncratic growth rate of 7% in his calculations. Plaintiff Exh. 87(a).

the amount of $3.6 million for the loss of society of the plaintiffs' seventy five year old wife mother. The Court emphasized the strong marital bonds which existed between the decedent and her husband of fifty seven years).

## C. Loss of Services

There is no claim that the $14,000 award for loss of services is excessive.

## D. Interest

There is no legitimate claim that the jury's assignment of $5,045,040.00 in interest on the award from the date of Mr. Pescatore's death to the date of the judgment is excessive. Upon examination of the jury's final figures, it is apparent that they applied the same 8.5% interest rate that was obtainable on the purchase of a five year Treasury Bond on the date of death. The plaintiff's expert brought that interest rate to the jury's attention. Plaintiff's Exh. 105.

## CONCLUSION:

For the above stated reasons, defendants' motion for a new trial on the damages issues, pursuant to FRCP 59(a), is without merit and is denied. The jury's verdict in this portion of the action is affirmed.

SO ORDERED.