**Lazara OPIO, etc., Plaintiff,**

v.

**Michael D. WURR, et al., Defendants.**

**No. 94 C 6495.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 6, 1995.

As Corrected Dec. 28, 1995.

---

Robert J. Zaideman, James R. Epstein, Jeffrey L. Whitcomb, Chicago, IL (Epstein, Zaideman & Esrig, P.C.); Richard R. Mottweiler, Chicago, IL, for plaintiff.

Elizabeth A. Knight, Robert E. Elworth, Des Plaines, IL (Knight, Hoppe, Fanning & Knight, Ltd.), for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

With the parties' submissions and this Court's August 28, 1995 approval of the final pretrial order ("FPTO") having established the ground rules for the trial of this action, brought by Lazara Opio ("Opio") as Administratrix of the Estate of her deceased husband Edilberto Opio Diaz ("Diaz") against truck driver Michael Wurr ("Wurr") and truck owner Newell Trucking, Inc. ("Newell"), this action has become ready for trial. At the August 28 conference that was held to discuss the FPTO and to deal with other related matters, this Court also (1) rendered its oral ruling (the "August 28 Opinion") denying defendants' simultaneously-submitted motion for partial summary judgment[1] and (2) established a schedule for briefing the parties' other motions in limine, both those submitted with the FPTO and those to be filed thereafter. This memorandum opinion and order now deals with all of the motions in limine and the scheduling of the case for trial.

### Opio's Motion

Opio seeks an order barring defendants and their attorneys from stating, eliciting testimony or presenting evidence as to a series of subjects. Defendants have interposed no objection regarding the following matters on that list, as to which this Court therefore grants Opio's motion:

1. as to the wealth, poverty or pecuniary circumstances of either Wurr or Newell;

2. as to Opio's receipt of any insurance payments, death benefits or collateral source payments;

3. as to any discussions between the parties about the possibility of settling Opio's claims;

4. as to any contentions (a) that defendants were not at fault, (b) that defendants are not completely responsible for all damages proved to be recoverable under law, (c) that Diaz was in any way contributorily

1. That motion had sought an adjudication of defendants' nonliability on the survival claims that are included in Opio's Complaint.

negligent, (d) that Diaz' claimed negligence contributed in any way to the cause of the collision or to his injuries or death or (e) that any third person contributed in any way to cause Diaz' injuries or death; and

5. as to Diaz' divorce from his former wife Margareta Opio, who is not a prospective beneficiary in this action.

■ With respect to that last item, however, defense counsel identifies two suggested qualifications. Diaz' three children of that earlier marriage are named as proposed beneficiaries in the wrongful death claims. To the extent that the children's claimed pecuniary loss includes loss of support (contrast the situation in *Estate of Davis v. Johnson*, 745 F.2d 1066, 1073 (7th Cir.1984)), defendants suggest that Diaz' payment or nonpayment of court-ordered child support is relevant. That may or may not be the case, depending on how the evidence develops at trial. Defendants' other contention, that the same information is relevant to the children's claim for loss of society, would seem far less likely to implicate evidence about Diaz' performance of his child support obligations (see, e.g., *Drews v. Gobel Freight Lines, Inc.*, 197 Ill.App.3d 1049, 1053–58, 145 Ill.Dec. 533, 535–38, 557 N.E.2d 303, 305–08 (1st Dist. 1990), *aff'd*, 144 Ill.2d 84, 161 Ill.Dec. 324, 578 N.E.2d 970 (1991))—but once again the trial evidence may indicate otherwise. In any event, no blanket exclusion-of-evidence order is appropriate in the respects discussed in this paragraph—instead the resolution of those issues will await the proffer of evidence at trial.

Opio's motion has two other facets, each of which defendants challenge outright. In those two items Opio asks this Court:

1. to withhold from the jury any information that Opio's recovery in this action is not subject to either state or federal taxes; and

2. to bar any evidence that Diaz did not survive the occurrence at issue, in which Wurr's tractor-trailer struck Diaz' vehicle from behind, driving it into another vehicle and resulting in the fire in which Diaz—trapped in his own vehicle—perished.

Each of those items requires discussion, at some length as to the first item and only in brief regarding the second.

■ As to the first, if Opio were advancing any federal claim or claims, *Norfolk & W. Ry. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) and its universalization in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486–87, 101 S.Ct. 2870, 2879–80, 69 L.Ed.2d 784 (1981) would expressly require the denial of Opio's motion and the inclusion of a jury instruction on the taxability of any damages award. But this is an Illinois-based diversity action, which under *Erie v. Tompkins* calls for the application of Illinois' substantive (though not its procedural) law. On that score *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 701 F.2d 1189 (7th Cir.1983) rejected the then-existing Illinois case law in favor of the result reached in *Liepelt* and *Gulf Offshore*, summarizing its conclusion in this language (*id.* at 1200):

> We also conclude that, although Illinois courts very likely would not instruct the jury that any damages it awarded would be nontaxable, the Illinois practice does not bind the federal courts under *Erie* because, so far as we can determine from the cases, Illinois's concerns are either procedural or based on a mistaken view of federal law.

Our Court of Appeals proved to have a clouded crystal ball in its reading of the underpinning for the prior Illinois decisions, for just two years later the Illinois Supreme Court considered and expressly rejected the *Liepelt* reasoning and specifically adopted the dissent in *Liepelt* (*Klawonn v. Mitchell*, 105 Ill.2d 450, 455–58, 86 Ill.Dec. 478, 480–82, 475 N.E.2d 857, 859–61 (1985)). At that point the situation was less than clear: Did *Klawonn* announce a substantive rule of law, in which event it would control here, or a purely procedural ruling, in which event *Liepelt* and its application in *Air Crash Disaster* would govern?

Just one year later some added light was shed on the subject, at least from the perspective of our Court of Appeals. Another of its opinions in *Air Crash Disaster*, 803 F.2d 304 (7th Cir.1986) produced a reaffirmation of the Court of Appeals' prior decision. Al-

though that 1986 case dealt with Arizona law rather than Illinois law, the Court of Appeals revisited its earlier decision, citing to *Klawonn* in the course of its analysis of Illinois state court practice and its exposition of why federal law should apply instead (*id.* at 315).

It is of course true that state law is pronounced by the Illinois Supreme Court, not by what any federal court—even our prestigious Court of Appeals—may have believed it to be before the Illinois Supreme Court has spoken.[2] But in this instance our Court of Appeals has had no direct opportunity to address the Illinois situation in light of *Klawonn,* so that this Court is left to draw inferences from what was said in *Klawonn* and in the two *Air Crash Disaster* decisions. And although the situation is not free from doubt, this Court thinks it most likely that our Court of Appeals will continue to require the giving of an instruction as to nontaxability of any damages award even in a diversity case where Illinois law provides the substantive rules of decision.

To begin with, *Klawonn* itself (105 Ill.2d at 458, 86 Ill.Dec. at 482, 475 N.E.2d at 861) refers to "[t]he fact that the State, in litigation based solely on State law, follows a *procedure* different from that applicable under Federal law ..." (emphasis added). As already stated, the 1986 *Air Crash Disaster* decision from our Court of Appeals cited *Klawonn* in the course of revisiting its own 1983 decision and went on to describe its earlier holding in this fashion (803 F.2d at 314–15):

> In particular, we have previously addressed the choice between federal and state law as to whether the jury should be instructed that its award is tax exempt. *See In re Air Crash I,* 701 F.2d at 1199–1200. In that case, a nontaxability instruction was required by federal common law, but was barred by Illinois law. We held that federal law should be applied unless Illinois had a substantive interest for refusing the instruction. The Illinois Su-

preme Court had articulated three grounds for not giving the instruction: It would deprive the plaintiff of a tax benefit intended by Congress; it is unnecessary if the jury is instructed on the proper measure of damages; and it would invite a flood of cautionary instructions. *See Hall v. Chicago & North Western Railway,* 5 Ill.2d 135, 148–53, 125 N.E.2d 77, 84–86 (1955); *see also Klawonn v. Mitchell,* 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857 (1985) (reaffirming state practice of refusing nontaxability instruction). We found that the first reason was incorrect as a matter of federal law because the Supreme Court had held that Congress, by excluding personal-injury awards from taxable income, did not intend to confer a tax benefit upon plaintiffs. *See Liepelt,* 444 U.S. at 496 n. 10, 100 S.Ct. at 759 n. 10. We concluded that the other two interests articulated by the Illinois Supreme Court "should not bind a federal court because they speak to matters of court administration, about which the federal courts have independent competence." *In re Air Crash I,* 701 F.2d at 1200. Hence, we held that, since Illinois did not have a substantive reason for refusing the instruction, federal law should apply.

It thus appears that our Court of Appeals would continue to view as nonsubstantive, and hence as nonbinding, the Illinois Supreme Court's rejection of *Liepelt* and that Court's summary statement of its ruling in *Klawonn,* 105 Ill.2d at 458, 86 Ill.Dec. at 482, 475 N.E.2d at 861:

> In our opinion proof of pecuniary loss, not simple under the best of circumstances, should not be rendered more complex by injecting the question of income tax or other extraneous factors.

Opio's motion is therefore denied.

■ As for Opio's second motion (that relating to Diaz' having survived the crash for at least a brief period of time), defendants'

---

2. This Court is reminded of the extended period during which our Court of Appeals announced and applied its own version of the piercing-the-corporate-veil doctrine, as it had articulated that doctrine in *Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157 (7th Cir.1963). It was not

until 1985 that the Court of Appeals reviewed the Illinois cases and announced that its handling of what should have been a state-law-controlled issue had been wrong all along (*Van Dorn Co. v. Future Chem. & Oil Corp.,* 753 F.2d 565, 569–71 (7th Cir.1985)).

argument in opposition cannot succeed in light of what this Court recently learned in the course of rejecting defendants' partial summary judgment motion in the August 28 Opinion. According to the submissions in connection with that motion, there is no dispute in the evidence as to Diaz' post-occurrence *survival*—instead the question that this Court answered in the affirmative on August 28 was whether there was evidence that would support submission to the jury of the issue of damages based on Diaz' post-occurrence *consciousness* (thus giving rise to pain and suffering on his part). Hence Opio's motion is granted—but if defendants are able to proffer evidence at trial sufficient to create a jury question as to Diaz' survival vel non, the present ruling will be revisited.

### Defendants' Motions

■ Defendants first seek to exclude any evidence that the relationship between Diaz and his stepchildren (Opio's children from a prior marriage, who are not numbered among Diaz' next-of-kin and therefore may not recover under the Illinois Wrongful Death Act, *In re Estate of Edwards*, 106 Ill.App.3d 635, 638, 62 Ill.Dec. 407, 410, 435 N.E.2d 1379, 1382 (2d Dist.1982)) has been affected by Diaz' death. But although the stepchildren cannot recover as such, their relationship with Diaz may certainly be shown to have had an impact on Opio, and may thus be relevant to the damages ascribable to Opio's loss of Diaz' services (see, e.g., *Eggimann v. Wise*, 56 Ill.App.2d 385, 390–91, 206 N.E.2d 472, 475–76 (3d Dist.1965); *Kaiserman v. Bright*, 61 Ill.App.3d 67, 69–70, 18 Ill.Dec. 108, 110, 377 N.E.2d 261, 263 (1st Dist.1978)) and to her loss of society as defined by Illinois law. Accordingly defendants' motion is denied.

Next defendants seek to bar any evidence of Diaz' conscious pain and suffering, an issue resolved adversely to defendants in the August 28 Opinion. That motion too is denied. And that being so, defendants' motion to exclude evidence that Diaz' vehicle caught fire after being struck by the Wurr-driven truck—Diaz having died in that fire—is obviously denied as well.

■ Defendants' next motion would seek to preclude "[a]ny evidence of any event leading up to or following the collision on the grounds of relevancy." That motion is patently overbroad, although defendants' total admission as to their liability properly carries with it the excludability of evidence as to Wurr's negligence and a number of other items. Though further elaboration on that subject can await this opinion's discussion of defendants' separate motion on the negligence issue, the motion quoted at the outset of this paragraph must be denied on overkill grounds (subject of course to this Court's opportunity to rule on specific objections as they may arise at trial).

■ Next defendants move to preclude "[a]ny reference to the wealth, poverty or financial condition of the decedent or his heirs, on the grounds of relevancy." Opio acknowledges the force of that motion, so long as it is understood that the motion does not bar evidence of Diaz' earnings and potential future earnings (which are recoverable in a wrongful death action and are therefore necessarily relevant). With that understood limitation, defendants' motion is granted.

■ As the final item in defendants' first motion in limine, they want to keep out of the case "[a]ny reference to the grief, sorrow or bereavement of the widow or next-of-kin, on the grounds that no recovery is permitted under the Illinois Wrongful Death Act for such items, damages being limited to the loss of support." Once again that motion is stated somewhat too broadly, for even though Opio's emotional distress, grief and sorrow are not a component of her pecuniary injuries (*Uhr v. Lutheran Gen. Hosp.*, 226 Ill. App.3d 236, 267, 168 Ill.Dec. 323, 344, 589 N.E.2d 723, 744 (1st Dist.1992)), the allowable damages include the loss of the love, care and companionship that Opio would have enjoyed if Diaz had not died (*Elliott v. Willis*, 92 Ill.2d 530, 540–41, 65 Ill.Dec. 852, 857, 442 N.E.2d 163, 168 (1982)). Thus the line of excludability is stated overexpansively in defendants' motion, which is denied only to the extent that it would foreclose evidence admissible under *Elliott* and like cases.

Defendants' second motion in limine targets an entire group of liability-related issues

as irrelevant in light of defendants' admission of liability on Opio's claims under the Illinois Wrongful Death Act.[3] Motion ¶ 7 reads:

7. That due to the judicial admission of liability on the wrongful death cause of action, Rule 401 mandates the exclusion of any evidence of the defendants' liability as irrelevant, such evidence including, but not limited to:

    a. Michael Wurr's guilty plea on the criminal charges against him resulting from the occurrence at issue;

    b. any irregularities in the daily logs kept by Michael Wurr during the period August 14, 1994 to August 18, 1994;

    c. any evidence of previous criminal pleas by Michael Wurr;

    d. Morgue or police investigation photos of Edilberto Opio Diaz, deceased;

    e. any evidence of the speed, weight, or control of the tractor trailer driven by Michael Wurr prior to or at the time of the occurrence; or

    f. the maintenance or repairs performed on the tractor trailer either prior or subsequent to the occurrence.

Opio acknowledges unequivocally that any evidence as to item f may not be admitted, and she also concedes that any evidence as to items a, b and c is inadmissible *except* as possible impeachment if Wurr should be called as a witness at trial. Opio's caveat represents an accurate statement of the law, and this Court grants that aspect of defendants' motion subject to that hedge.

■ Defendants' inclusion of item d is puzzling. D. Mem. 3 cites to, discusses and quotes from *Bullard v. Barnes*, 102 Ill.2d 505, 82 Ill.Dec. 448, 468 N.E.2d 1228 (1984) at some length. But defendants' espousal of *Bullard* fails to disclose that in that case the

Illinois Supreme Court *reversed* the Appellate Court's decision that morgue photographs of the decedent were inadmissible, stating (*id.* at 519, 82 Ill.Dec. at 455, 468 N.E.2d at 1235):

If a photograph of a decedent has sufficient probative value it should be admitted in spite of the fact that it may be gruesome or inflammatory, and such a decision normally rests within the discretion of the trial court.

Because Diaz' pain and suffering will represent a principal issue at trial, such photographs are probative and hence admissible (*Drews*, 144 Ill.2d at 99–101, 161 Ill.Dec. at 332, 578 N.E.2d at 978).

■ Finally, defendants are right in seeking to exclude item e as evidence of their liability. But in a survival action brought to recover for a decedent's pre-death pain and suffering stemming from a motor vehicle collision, evidence that shows the extent of the impact is admissible (*Drews, id.* at 100–01, 161 Ill.Dec. at 332–33, 578 N.E.2d at 978–79). That portion of defendants' motion is therefore denied.

That brings up for consideration defendants' Third Motion in Limine, which seeks to bar:

1. every otherwise admissible document written either partially or entirely in the Spanish language, "as their probative value is substantially outweighed by the danger of confusing or misleading the jury, and is otherwise a needless cumulative presentation of similar documentary evidence written in the English language";

2. all evidence of expenses for Diaz' medical services, funeral and burial, as assertedly nonrecoverable under the Wrongful Death Act (as contrasted with the Illi-

---

3. Although defendants frame their admission in those terms, their Motion ¶ 2 states its effect in this fashion:

    That such an admission leaves for adjudication by this court or jury the issues of damages resulting from the admitted wrongful death; whether the deceased suffered conscious pain after the accident yet prior to his death, as prescribed by the survival action; and the amount of damages, if any, to compensate for that conscious pain and suffering.

Moreover, defendants' Amended Answer to Opio's Amended Complaint responds in part to her two survival claims by incorporating by reference defendants' admissions regarding Opio's two wrongful death claims. Consequently defendants must be viewed as having admitted liability on the survival claims as well, except for the issue of Diaz' post-accident consciousness.

nois Family Expense Act, which Opio has not invoked); and

3. any reference to the official Illinois Traffic Crash Report about the collision, which is said to be objectionable on several grounds.

None of those matters requires much discussion.

Defendants' first contention is frankly absurd. There is no reason that the jury should not be permitted to view the original documents (which Opio describes as consisting primarily of cards and letters written by Diaz to Opio, offered as evidence of the loss of society suffered by Opio)—and it is assumed that the parties will reach agreement on an English translation of any such documents, failing which this Court will require that the documents be submitted to this District Court's official interpreter, reserving the right to impose the costs of translation in such manner as appears appropriate. Defendants' motion on that item is denied.

As to the second item, it is inappropriate to lump funeral and burial expenses (which are not recoverable in this case) with medical expenses, which are recoverable under each of Opio's claims (see, e.g., *Chrysler v. Darnall*, 238 Ill.App.3d 673, 179 Ill.Dec. 721, 606 N.E.2d 553 (1st Dist.1992)). That motion is therefore granted in part and denied in part.

Lastly, it is too early to tell whether the Illinois Traffic Crash Report may be admissible. To the extent that it would go to issues that are no longer in the case (principally Wurr's negligence), that Report may not be used. But if and to the extent that the Report addresses matters that this opinion has held admissible (the extent of the impact is a good example), it too may be admitted. Accordingly this last motion is granted except to the extent that the Report comes within the areas of admissibility identified in this opinion.

### Trial

Counsel for the parties have advised this Court by letter as to their joint availability for trial. In accordance with that advice, this action is set to begin trial at 9:30 a.m. December 19, 1995. Each party is ordered to submit proposed jury instructions and voir dire questions on or before December 5, 1995 (and in those respects, counsel are urged to confer in advance of tendering those submissions in an effort to minimize duplication). Finally, this Court will notify the parties shortly before the trial date as to the date and time of the pretrial voir dire conference.

### Conclusion

All of the parties' motions in limine have been ruled on in this opinion. As reflected in the discussion, they have been granted in part and denied in part, and it would be pointless to extend this *Conclusion* section by recapitulating the individual rulings rather than simply referring the litigants back to the text.