(No. 89-CC-0157—

BETTY HIGHTOWER, Individually, and as Special Administratrix of the Estate of DONNA HILLS and as personal representative of DONNA HILLS, Deceased, for the use and benefit of BETTY HIGHTOWER, VINCENT HILLS, JR., TROY HILLS, and MICHAEL MILLER, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 25, 1996.*

*Order filed April 15, 1996.*

JAMES T. J. KEATING, for Claimants.

JIM RYAN, Attorney General (DAVID RODRIGUEZ, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

This cause comes before the Court on the issue of damages, the Court having previously found liability on the part of Respondent. The history of this case dates back to 1986. On October 12, 1986, Donna Hills, a severely mentally retarded woman, was placed at the Ludeman Developmental Center in Park Forest, Illinois. Donna Hills, who required 24-hour supervision, was left alone in a tub of water and drowned. Donna Hills was born on July 7, 1964. Claimants filed a verified complaint in this matter in a timely fashion. On October 18, 1993, the Court entered a default judgment against Respondent, on the issue of liability only, for failure of the Respondent to comply with orders relating to discovery and remanded this matter to the Commissioner assigned to the case for a hearing on damages.

On May 20, 1994, a proposed joint stipulation to settle this matter for four hundred twenty-five thousand dollars ($425,000) was filed with the Court. That joint stipulation was rejected by the Court on September 30, 1994, because there was no evidence or information to indicate how the settlement figure was reached, how the award was to be divided among the heirs, or whether there was any basis in law to support the award. Claimants filed a motion to reconsider that order which was subsequently denied. Accordingly, a hearing on damages was held and the following testimony was adduced.

Dr. Brian Kern, who is board certified in emergency medicine, testified that he examined Donna Hills on October 12, 1986. Dr. Kern indicated that Donna Hills died from drowning in a bathtub on that date. According to Dr. Kern, before Ms. Hills died she had some pain and

suffering even though she was profoundly mentally retarded because she was still able to feel. Specifically, Dr. Kern indicated that Claimants' decedent would have been gasping for breath and able to see out of the bathtub. However, she would not have been able to integrate the necessary information in order to get out of the tub and save herself. According to Dr. Kern, the pain would have lasted five to ten minutes before Donna Hills lost consciousness.

Betty Hightower, the mother of Donna Hills, testified that Donna became mentally retarded at the age of three and a half years old. Before that time she was a "normal little girl, playful and cheerful." After Donna became mentally retarded, Ms. Hightower and her family continued to care for her at home for six and a half years, from approximately 1967 to 1974. Since Donna was profoundly mentally retarded, she required involved, 100% care, including taking her to the bathroom, washing her, dressing her, feeding her, and entertaining her, and other care. Ms. Hightower was assisted in taking care of Donna by Donna's siblings, Claimants Michael Miller, Vincent Hills, Jr., and Troy Hills.

In 1974, Donna was placed in a State home because her seizures had increased and the family could no longer take care of her at home. Donna was first placed at Reed for approximately five months. Ms. Hightower visited Donna three times during the time Donna was at Reed.

After Donna left Reed, she was placed at Dixon for five years. Ms. Hightower would visit Donna about every four months. She could not visit more often because she did not own a car. While Ms. Hightower requested that Donna come home on visits, she was advised that it was too far for her to come on the train. Ms. Hightower would call the staff at Dixon to inquire about Donna on a regular basis. Since Donna could not speak, she did not speak to

her, and because of the arrangements at Dixon, Donna was not able to hear Ms. Hightower's voice on the telephone.

Ms. Hightower was not satisfied with the care and treatment Donna was receiving at Dixon and therefore she asked for Donna's transfer. Donna was subsequently transferred to the Ludeman Center in 1979. The Ludeman Center was closer to Ms. Hightower's residence. While Donna was at Ludeman, Ms. Hightower would bring Donna home for two to three week intervals about every four months. In addition, Ms. Hightower and her children would visit Donna at Ludeman and would call Donna so she could hear their voices. According to Ms. Hightower, she was planning on bringing Donna home to live with her.

Also, according to Ms. Hightower, Donna knew her and was happy when she came to visit. When they were together, they would hug and rock. Donna would be sad when Ms. Hightower left.

Ms. Hightower learned that Donna was dead after she received a call and went to the hospital. When she learned how Donna had died, she felt hurt and betrayed. Ms. Hightower loved Donna and misses her. She thinks about Donna all of the time.

Troy Hills is Donna's younger sister. Troy was 20 years old when Donna died. Troy was approximately six years old when Donna was first placed in an institution. While Donna lived at home, Troy would help with the day-to-day activities (including washing and feeding Donna) to the best of her ability. She also played with Donna. Troy was also the only one Donna would let fix her hair. When other people tried, Donna would cry or throw a tantrum.

After Donna was institutionalized, Troy would visit her several times a year. Also, when Donna started coming home to visit, Troy and her brothers would take care of

Donna while their mother was at work. Troy enjoyed caring for Donna. While Donna was placed at Ludeman, Troy would call so Donna could hear her voice. Troy loved her sister and misses her. Troy named her own daughter Donna, after her sister's name. Troy still thinks about her sister.

Michael Miller is Donna's older brother. He was nine years of age when Donna was born. Michael lived at home with Donna until 1972 when he left to enroll in the Job Corps. During the time he was at home, he helped his mother take care of Donna by feeding her, dressing her, and under certain circumstances, restraining her.

Michael would return home to visit for three to four days at a time when Donna was home to visit. During that time period he would help take care of Donna. Donna recognized him when he came to visit and would be happy. The fact that Donna was mentally retarded encouraged him to obtain a bachelor's degree in social work. When Michael found out his sister had drowned, he was "angry, hurt and numb." Michael loved his younger sister and misses her.

Vincent Hills is Donna's younger brother. He was 22 years old when Donna died. Before Donna was institutionalized, Vincent would help with Donna's everyday activities. He also played with her. Vincent would visit Donna at Ludeman every two to three months and helped to take care of her when she came home on extended visits every three to four months. Vincent loved his sister and misses her.

According to Michael and Vincent, their mother, Betty Hightower, has been overprotective of them since Donna died.

Donna's funeral cost one thousand seven hundred eighty-four dollars ($1,784). According to standard mortality

tables, the deceased and the Claimants had more than 30 years left in which to enjoy each other's companionship at the time of Donna's death.

In this matter there are five Claimants: the estate of Donna Hills; Betty Hightower, the mother of the decedent; Troy Hills, the sister of the decedent; Michael Miller, the older brother of the decedent; and Vincent Hills, the younger brother of the decedent. The claim of the estate is for Donna's conscious pain and suffering before her death and funeral expenses. The other claims are for loss of society. Under Illinois law, all of the claims are compensable. (*Copeland v. Illinois Department of Mental Health and Developmental Disabilities* (1989), 41 Ill. Ct. Cl. 125; *Drew v. Gobel Freight Lines* (1991), 197 Ill. App. 3d 1049.) All of the Claimants in this matter have presented evidence as indicated herein to support their respective claims.

Respondent in this matter does not dispute that Claimants have established their respective claims. However, Respondent disputes Claimants' request for the maximum amount of damages by arguing that all instances of loss of society should not be valued at the statutory maximum. It is always a very difficult task measuring pain and suffering and loss of society. In this case we have a severely mentally retarded decedent who could not work, speak or integrate ideas. The decedent's mother, Claimant Betty Hightower, visited with the decedent less than 65 days a year. The two brothers and one sister saw the decedent less often. A maximum award is not indicated under the peculiar facts of this case.

Based on the foregoing, it is the finding of the Court that the estate of Donna Hills be awarded the sum of twenty-six thousand seven hundred eighty-four dollars ($26,784) for pain and suffering and funeral expenses. The evidence established that the decedent endured between

five and ten minutes of conscious suffering and had a funeral bill of one thousand seven hundred eighty-four dollars ($1,784). Betty Hightower, the Mother of the decedent, should be awarded sixty thousand dollars ($60,000) for loss of society. The evidence established that Ms. Hightower had spent time taking care of her daughter, loved her and missed her. Troy Hills, the sister of the decedent, should be awarded thirty thousand dollars ($30,000) for loss of society. The evidence established that Ms. Hills had a relationship with her sister, spent time taking care of her, loved her and missed her to the extent that she named her daughter Donna, after the deceased. Michael Miller, the older brother of the decedent, and Vincent Hills, the younger brother of the decedent, should each be awarded eighteen thousand dollars ($18,000) for loss of society. The evidence established that Mr. Miller and Mr. Hills had relationships with their sister, spent time taking care of her, loved her and missed her.

For the foregoing reasons, it is the order of the Court that twenty-six thousand seven hundred eighty-four dollars ($26,784) is awarded to the estate of Donna Hills; sixty thousand dollars ($60,000) is awarded to Betty Hightower, mother of the decedent; eighteen thousand dollars ($18,000) is awarded to Vincent Hills, Jr., the brother of the decedent; thirty thousand dollars ($30,000) is awarded to Troy Hills, the sister of the decedent; and eighteen thousand dollars ($18,000) is awarded to Michael Miller, the brother of the decedent, in full and final satisfaction of all of the Claimants' claims.

## ORDER

FREDERICK, J.

This cause comes before the Court on the Claimants' motion to add interest to awards, and the Court having

reviewed the court file, and the Court being fully advised in the premises, wherefore, the Court finds:

1. That Supreme Court Rule 219(c)(vii) should not apply to the facts of this case retroactively.

2. That the imposition of interest would not be appropriate.

Therefore, it is ordered that Claimants' motion to add interest to awards is denied.